E. M. ANDREWS v. W. L. POPE.

(Decided May 1, 1900.)

*Endorsement Without Recourse—Collateral Paper-Writing —Guaranty—Agreement to Buy.*

1. A guaranty is a promise to answer for the payment of some debt or the performance of some duty in case of the failure of some person, who in the first instance is liable for such payment or performance.

2. Where the defendant in a land trade with the plaintiff transfers to him, in part consideration, a couple of notes by endorsement "without recourse," but accompanied with a special written agreement to the effect that if the maker of the notes shall dispute and refuse to pay the same, and litigation shall be necessary to enforce their payment, then he agrees to take them up at once and pay the amount of same and have the notes transferred back to him: *Held,* this was a guaranty, and not an agreement to buy.

CIVIL ACTION to enforce the payment of a couple of notes, transferred by the defendant to the plaintiff by indorsement "without recourse," but with written agreement, signed by defendant, for their payment in default of the maker, tried by *McNeill, J.,* upon agreed facts.

His Honor construed the written agreement signed by defendant to be a guaranty for the payment of the notes, and not a mere agreement to buy them, as contended for by defendant, and rendered judgment in favor of plaintiff. Defendant excepted and appealed.

The written agreement, and other facts agreed, are recapitulated in the opinion.

*Mr. T. W. Hawkins,* for appellant.
*Messrs. Jones & Tillett,* for appellee.

MONTGOMERY, J.   The plaintiff sold and conveyed to the defendant a lot of land in the city of Charlotte, and received in part payment of the same two notes of $150 each, which were executed by one Johnson to the defendant.   Before the sale of the land was completed, the plaintiff had seen Johnson, and had been warned by him not to trade for the notes. Johnson said that they were executed for a supposed balance on a partnership settlement, but that since their execution he believed that the amount was not due.   The plaintiff reported that conversation to the defendant, who said that the amount was justly due, and that if the plaintiff would accept the notes endorsed "without recourse" in part payment of the land, he would execute and deliver with the notes a paper-writing in the following words and figures:   "Whereas, E. M. Andrews has agreed to take two notes, given by G. S. Johnson to me, each in the sum of $150, as part of the purchase money of the lot of land in the city of Charlotte, on Liddell street, which I have this day bought from said Andrews, and the notes have been transferred by me to said Andrews without recourse on me.   It is understood and agreed by me that if said Johnson shall dispute the said notes and refuse to pay the same, and litigation shall be necessary to enforce the payment of the notes, then I agree to take up the notes at once and to pay the said Andrews the amount of the same, and have the Johnson notes transferred back to me."

The deed for the land was delivered to the defendant, the notes endorsed without recourse and the paper-writing delivered to the plaintiff.   The plaintiff, at the maturity of the notes, demanded payment of Johnson and Johnson declined to pay them, stating that he "wanted to investigate and satisfy himself that he owed the notes before he admitted his liability on the notes."   A year and a half afterwards the plaintiff made a peremptory demand on Johnson for payment, and the

same was refused, whereupon the plaintiff notified the defendant of the last demand on Johnson, and his refusal to pay, and offered to transfer the notes back to the defendant upon the payment of the amount due on them.· Johnson was insolvent at the time of the maturity of the notes, and has continued so since that time.

The plaintiff contends that the paper-writing is a guaranty on the part of the defendant for the payment of the notes by Johnson, the maker. The defendant insists that it is simply an agreement on the defendant's part to *buy* the notes if Johnson should not pay them at maturity, and that the offer to buy was open for a reasonable time only after their maturity, and Johnson's failure to pay on demand. The argument of the defendant's counsel was that the paper-writing shows on its face that the defendant refused to endorse the notes except in a restricted manner (without recourse), that he did not use the word guaranty and that, from the particularity of the language employed, it is apparent that the intention and agreement of the parties were that a different contract from that of guaranty was being entered into, and that that difference was for the advantage and benefit of the defendant. That the agreement was one on the part of the defendant to *buy* the notes.

It was also argued that the words "take up" the notes meant that the defendant would *buy* the notes at their face value at the time of their maturity. Several cases were cited . to the effect that where treaties for the sale of personal property are on foot and the property is delivered to be returned if it does not come up to representation within a specified time, and the property is not returned within that time, that the sale becomes absolute. If the paper-writing was in law an agreement on the part of the defendant to buy the notes, then the law in the cases cited would be applicable, and the

time elapsing between the maturity of the notes and the demand at that time by the plaintiff upon Johnson to pay the notes, and the notice to the defendant of Johnson's refusal, would be unreasonable, and the defendant would not be bound under his agreement.

But we are of the opinion that the paper-writing is not an agreement on the part of the defendant to buy the notes. Disconnected with the transaction of the sale of the land, it is impossible to conceive of an agreement on the part of a reasonable person to give full value for a note which he knew to be worthless—the maker being insolvent. The agreement must be understood in the light of the surrounding circumstances, and the purposes for which it was made, and the language construed in its ordinary and usual sense.

We think the promise of the defendant is a guaranty that the notes would be paid by Johnson, the debtor, and that in case he should not pay them the defendant would. A guaranty is defined by Chancellor Kent, (3 Com., 121), as "A promise to answer for the payment of some debt or the performance of some duty in case of the failure of some person who, in the first instance, is liable for such payment or performance," and that definition was adopted by this Court in *Carpenter v. Wall*, 20 N. C., 144.

The paper-writing in the case before us falls within that definition, and such contracts being mercantile in their nature must be interpreted so as to give effect to whatever is reasonably to be presumed the intention and understanding of the parties. It is not difficult to understand the intention of the parties in this transaction. The plaintiff had received in part payment of his land promissory notes due by another to the defendant, and had conveyed the land to the defendant. The notes were endorsed *without recourse*. The special agreement was to the effect that if the maker of the notes

should not pay them at maturity the defendant would. He preferred to be a guarantor rather than an endorser, the latter under our law being a surety, and as such liable to be sued either with or without the principal. The guaranty compelled the plaintiff to do the unpleasant duty of pressing the defendant's debtor, Johnson, for the payment of the notes. Demand was made upon the maker of the notes at their maturity, and we think that the maker, at that time, denied his liability and refused to pay, and, if the maker had been solvent, it would have been the duty of the plaintiff to have given the defendant notice of Johnson's refusal to pay the note. But the maker was insolvent, and continued so up to the bringing of the suit, and the plaintiff's failure to notify the defendant of Johnson's refusal to pay has worked him no harm or damage, and the defendant can not complain. *Sullivan v. Field,* 118 N. C., 358.

If the interest which the defendant had to pay on the notes, after Johnson had refused to pay them was a partial loss, and he would be entitled to exoneration *pro tanto,* he did not claim it. The defendant rested his case on the ground that he was not a guarantor, and in the case agreed it is stipulated that if the plaintiff is entitled to recover he should have judgment against the defendant for $300, the principal amount of the note, with interest and cost.

The judgment below was for the plaintiff, and it is
Affirmed.