**FEDERAL DEPOSIT INSURANCE CORPORATION, as Receiver for Cooperative Bank, Plaintiff,**

v.

**Frederick WILLETTS, III, et al., Defendants.**

**No. 7:11–CV–165–BO.**

United States District Court, E.D. North Carolina, Southern Division.

April 13, 2012.

Order Denying Reconsideration Oct. 2, 2012.

Mary L. Wolff, Sharon L. Petty, Wolff Ardis, P.C., Memphis, TN, Ruth M. Allen, Hogan & Allen, PLLC, Raleigh, NC, for Plaintiff.

Camden R. Webb, Williams Mullen, Raleigh, NC, David W. Goewey, Meredith L.

Boylan, Ronald R. Glancz, Venable LLP, Washington, DC, for Defendants.

## ORDER

TERRENCE WILLIAM BOYLE, District Judge.

This matter is before the Court on Defendants' Motion to Dismiss [DE 18]. A hearing was held before the undersigned on March 15, 2012, and the matter is ripe for ruling. For the reasons discussed below, Defendants' motion is denied.

## BACKGROUND

The Federal Deposit Insurance Company (FDIC or Plaintiff) filed this action as receiver for Cooperative Bank in Wilmington, North Carolina, against officers and directors of the bank for negligence, gross negligence, and breach of fiduciary duties. FDIC points specifically to several steps taken by the bank beginning in 2005 as part of an aggressive growth strategy, evidenced by rapid growth in Cooperative Bank's acquisition, development, and construction loan concentration as a percentage of total bank capital. FDIC contends that Defendants permitted a lax loan approval process, that state and federal regulators repeatedly warned Defendants about risks associated with a high concentration in speculative loans, and that Defendants continued focus on real estate lending after 2007 when they should have known that the real estate market was slowing. FDIC seeks recovery of specific loans made by Cooperative Bank, alleging that each of these loans was high-risk and had critical deficiencies.

Defendants, consisting of six outside directors and three officers of Cooperative Bank, have moved to dismiss this action in its entirety pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Defendants offer six bases for their motion to dismiss: (1) North Carolina law provides for no cause of action for ordinary negligence against officers or directors; (2) North Carolina's business judgment rule precludes a cause of action for negligence or breach of fiduciary duty against officers and directors for informed decisions made in good faith; (3) the outside directors were permitted to rely on information provided to them such that the ordinary negligence claim against them should fail; (4) Cooperative Bank expressly eliminated director liability in its Articles of Incorporation causing the claim of ordinary negligence against the outside directors and Mr. Willetts to fail; (5) the Complaint fails to make sufficient separate factual allegations to support a cause of action for gross negligence; and (6) the tag-along breach of fiduciary duty claim should be dismissed as duplicative of the negligence claim.

## DISCUSSION

A Rule 12(b)(6) motion tests the legal sufficiency of the complaint. *Papasan v. Allain,* 478 U.S. 265, 283, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986). When acting on a motion to dismiss under Rule 12(b)(6), "the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." *Mylan Labs., Inc. v. Matkari,* 7 F.3d 1130, 1134 (4th Cir.1993). A complaint must allege enough facts to state a claim for relief that is facially plausible. *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). Facial plausibility means that the facts plead allow the court to draw the reasonable inference that the defendant is liable for alleged misconduct; mere recitals of the elements of a cause of action supported by conclusory statements do not suffice. *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). If the factual allegations do not nudge the plaintiff's claims "across the line from conceivable to plausible," the "complaint must be

dismissed." *Twombly*, 550 U.S. at 570, 127 S.Ct. 1955.

## I. *Ordinary Negligence against Officers and Directors*

■ Plaintiff brings this action under § 1821(k) of the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 (FIRREA). 12 U.S.C. § 1821(k). Section 1821(k) provides that a director or officer of an insured depository institution may be held personally liable for money damages in a civil action for gross negligence and any similar conduct that demonstrates a greater disregard for the duty of care as may be provided under applicable state law. FIRREA does not, therefore, prevent the FDIC from pursuing state law claims against officers and directors if the state law permits those persons to be sued for simple or ordinary negligence. *Atherton v. FDIC*, 519 U.S. 213, 227, 117 S.Ct. 666, 136 L.Ed.2d 656 (1997) (quoting S.Rep. No. 101–19, p. 318 (1989)). Accordingly, Defendants may be liable if their actions are deemed to be grossly negligent or greater than grossly negligent if North Carolina imposes an ordinary negligence standard on corporate officers and directors. *Id.*

Plaintiff and Defendants disagree as to whether North Carolina law applies an ordinary or gross negligence standard to the actions of officers and directors. In North Carolina, officers and directors of corporations must discharge their duties (1) in good faith; (2) with the care an ordinary prudent person in a like position would exercise under similar circumstances; and (3) in a manner he reasonably believes to be in the best interests of the corporation. N.C.Gen.Stat. §§ 55–8–42; 55–8–30. Such standard was the state of the law in North Carolina prior to the enactment of the statute. *See Fulton v. Talbert*, 255 N.C. 183, 184, 120 S.E.2d 410 (1961) (discussing the Business Corporation Act, codified in 1957, which stated that

officers and directors were deemed to be in a fiduciary relationship with the corporation and should discharge their duties in good faith and with the diligence of an ordinarily prudent man under similar circumstances in like positions.) North Carolina courts have held that directors of a corporation are not liable to third parties for ordinary or simple negligence. *Myers & Chapman, Inc. v. Thomas G. Evans, Inc.*, 323 N.C. 559, 572, 374 S.E.2d 385 (1988). Courts have distinguished, however, between claims of ordinary negligence by *third parties* and claims of ordinary negligence by the *corporation itself* against its directors. *See* Russell M, Robinson II, *Robinson on North Carolina Corporation Law* §' 14.08 (7th ed. 2009).

■ While a review of the case law reveals the application of potentially differing standards, the North Carolina Supreme Court has stated that directors and managing officers of a corporation are liable for *either willful or negligent* failure to perform their duties. *North Carolina Corp. Comm. v. Harnett Cnty. Trust Co.*, 192 N.C. 246, 134 S.E. 656 (1926) (emphasis added); *compare FF Milling Co. v. Sutton*, 9 N.C.App. 181, 184, 175 S.E.2d 746 (1970) (citing *Sec. Nat. Bank v. Bridgers*, 207 N.C. 91, 176 ·S.E. 295 (1934)) (directors may be held liable for gross neglect of their duties, mismanagement, fraud and deceit but not errors in judgment made in good faith) *with Anthony v. Jeffress*, 172 N.C. 378, 90 S.E. 414 (1916) (directors are charged with actual knowledge of the corporation's financial condition and are responsible for damages sustained by reason of their negligence, fraud, or deceit). The North Carolina Supreme Court further held that "if there is a loss of the corporations assets, caused and brought about by the negligent failure of its officers to perform their duties, the corporation, or its receiver ... can main-

tain an action therefor." *North Carolina Corp. Comm.*, 192 N.C. at 246, 134 S.E. 656. Accordingly, the Court finds that a cause of action for ordinary negligence against officers and directors by the corporation itself is not foreclosed by North Carolina law.

## II. *Business Judgment Rule*

The business judgment rule serves to prevent courts from unreasonably reviewing or interfering with decisions made by duly elected and authorized representatives of a corporation. *Robinson on North Carolina Corporations*, § 14.06. "Absent proof of bad faith, conflict of interest, or disloyalty, the business decisions of officers and directors will not be second-guessed if they are 'the product of a rational process,' and the officers and directors have 'availed themselves of all material and reasonably available information' and honestly believed they were acting in the best interest of the corporation." *State v. Custard*, 2010 N.C.B.C. 6, 2010 WL 1035809 *21 (N.C.Super. March 19, 2010) (quoting *In re Citigroup Inc. S'holder Derivative Litig.*, 964 A.2d 106, 124 (D.Ch.2009)). The business judgment rule is akin to a gross negligence standard. *See First Union Corp. v. SunTrust Banks, Inc.*, 2001 N.C.B.C. 09, 2001 WL 1885686 *10 (N.C.Super., August 10, 2001).

Defendants contend that Plaintiff's claims for ordinary negligence and breach of fiduciary duty must be dismissed because the business judgment rule serves to shield Defendants from liability. Because the business judgment rule presupposes the exercise of reasonable care, "North Carolina law may recognize director liability for simple negligence, to the extent that such negligence falls outside the protection of the business judgment rule." *Resolution Trust Corp. v. Bernard*, No. 94–CV–475, 1995 WL 17164886 *12 (M.D.N.C.1995). Plaintiff has alleged that

Defendants were made aware of certain risks associated with their actions and that they continued to act in conflict with the best interests of Cooperative Bank, The Court does not know at this early stage of the proceedings "what evidence will ultimately be presented to support the simple negligence claim, and, consequently, the [C]ourt is unable to determine [at this time] whether the business judgment rule will foreclose liability for simple negligence." *Id.*; *see also Swenson v. Thibaut*, 39 N.C.App. 77, 107, 250 S.E.2d 279 (1978) (holding that "where the business judgment question is presented to a court as a ground for dismissal, the sole issue for determination is whether the decision was made in good faith" and relying on evidence beyond the pleadings to make such determination).

Accordingly, because sufficient facts of ordinary negligence have been pled, and only with further factual development will the Court be in a position to determine whether the business judgment rule would apply to shield Defendants' liability, dismissal of Plaintiff's ordinary negligence claim is inappropriate at this time.

## III. *Outside Director Reliance*

North Carolina General Statute 55–8–30(b) provides that a director of a corporation is entitled to rely on information provided by certain individuals, including legal counsel and officers of the corporation whom the director reasonably believes to be reliable, when making decisions. This protection is not, however, absolute; it does not apply if the director has actual knowledge that makes reliance otherwise permitted unwarranted. N.C.Gen.Stat. § 55–8–30(c). As noted above, at this early stage of the proceedings, the Court has insufficient evidence before it to determine whether the outside directors reasonably relied on information provided to them or

whether they had actual knowledge that would have made such reliance unwarranted. Plaintiff has sufficiently pled allegations of ordinary negligence on the part of the outside directors, and it remains to be seen whether the outside directors have a defense under N.C. Gen.Stat. § 55–8–30(b). Dismissal of these claims at this time is therefore also inappropriate.

## IV. *Express Elimination of Liability*

North Carolina General Statute § 55–2–02(b)(3) provides that articles of incorporation may limit or eliminate the personal liability of a director. However, no such provision will be effective with respect to acts or commissions that the director at the time of the breach knew or believed were clearly in conflict with the best interests of the corporation, N.C.Gen.Stat. § 55–2–02(b)(3). As discussed above, Plaintiff has sufficiently pled that the outside directors and Mr. Willetts acted in conflict with the best interest of the bank, and, therefore, dismissal of these claims pursuant to the exculpatory clause without further examination of whether or not these Defendants knew or believed their actions were in conflict with the banks' best interests would be premature. *See Custard,* 2010 WL 1035809 *22 (at summary judgment stage, plaintiff must *prove* that the officers and directors have not acted in good faith in order to overcome presumption of good faith).

## V. *Sufficiency of the Pleadings of Gross Negligence*

Section 1821(k) of the FIRREA provides that the definition of gross negligence should be grounded in state law. North Carolina courts have historically used interchangeably the terms "gross negligence" and "willful and wanton conduct." *See Yancey v. Lea,* 354 N.C. 48, 53, 550 S.E.2d 155 (2001) (quotation and citation omitted). Both the General Assembly and the Supreme Court of North Carolina have

clarified the difference between the two terms, albeit outside of the corporate governance context, finding that willful and wanton conduct amounts to *more than* gross negligence. N.C.Gen.Stat. § 1D–5(7); *Jones v. City of Durham,* 360 N.C. 81, 86, 622 S.E.2d 596 (2005) *opinion withdrawn and superceded on other grounds by* 361 N.C. 144, 638 S.E.2d 202 (2006); *see also Snow v. Oneill,* No. 1:04–CV–681, 2006 WL 1837910 *2 (M.D.N.C.2006) (discussing same). The Court finds such distinction instructive here. Additionally, the plain language of § 1821(k) indicates that intentional conduct constitutes a greater disregard for the duty of care than gross negligence. 12 U.S.C. § 1821(k). Plaintiff need not, therefore, show that Defendants acted intentionally or that their conduct rose to the level of "deliberate or conscious action implied in the combined terms of 'willful and wanton.'" *Jones,* 360 N.C. at 86, 622 S.E.2d 596 (citing *Foster v. Hyman,* 197 N.C. 189, 191, 148 S.E. 36 (1929)).

▮ Plaintiff's complaint makes sufficient allegations of gross negligence on the part of Defendants. The complaint alleges that directors were repeatedly warned about regulatory violations and were advised that loans were being made in violation of the loan policy but took no action. The complaint also alleges that many loans were approved after an inappropriate level of review and that loans were approved without critical information such as ability to repay the loan and whether the bank was properly secured. The complaint further sets out multiple deficiencies with regard to each loan at issue, including improper structuring, insufficient repayment sources, inadequate or wrongly valued securities, loan policy violations, lack of feasibility studies, overstatement of value, insufficient underwriting, and insufficient appraisal bases. The pleading require-

ments of Rule 8 of the Federal Rules of Civil Procedure are designed to "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Slade v. Hampton Roads Reg'l Jail*, 407 F.3d 243, 252 (4th Cir.2005) (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). Plaintiff has complied with Rule 8 with regard to its gross negligence claims and those claims are not subject to dismissal.

## VI. *Breach of Fiduciary Duty as Duplicative of Negligence Claim*

Rule 8 also provides that a party may plead claims in the alternative or may make two or more statements of a claim either in a single count or separate ones. Fed.R.Civ.Pro. 8(d)(2). Accordingly, though the Court may have authority to do so, the Court finds no basis at this time on which to dismiss Plaintiff's breach of fiduciary duty claim as duplicative.

## VII. *Summary*

Section 1821(k) provides for a "floor" standard of gross negligence to impose personal liability on officers or directors. Plaintiff has alleged sufficient claims of gross negligence to withstand Defendants' motion under 12(b)(6). Section 1821(k) also provides that Plaintiff may proceed under a stricter standard, namely ordinary negligence, if provided for by state substantive law. The Court's reading of North Carolina law finds that it does not preclude a claim for ordinary negligence against directors or officers by the corporate body itself, and Plaintiff has sufficiently plead claims of ordinary negligence by Defendants. Whether such actions may be protected by the business judgment rule is a determination not appropriately made at this stage of the proceedings.

## CONCLUSION

That a plaintiff must allege plausible grounds for relief does not require a plain-tiff to satisfy a probability requirement at the pleading stage. *Twombly*, 550 U.S. at 556, 127 S.Ct. 1955. Though Defendants would like to foreclose this action at the outset, the Court finds that, at bottom, Plaintiff has satisfied the pleading requirements of Rule 8 and has alleged sufficient facts to nudge its claims of negligence, gross negligence, and breach of fiduciary duty across the line from conceivable to plausible. Accordingly, Defendants' Motion to Dismiss is DENIED.

## ORDER

This matter is before the Court on defendants' motion for reconsideration [DE 41]. Plaintiff has responded [DE 46], defendants' have replied [DE 51], and the matter is ripe for ruling. Also pending before the Court and ripe for ruling is plaintiff's motion to strike defendants' fifth affirmative defense [DE 47]. For the reasons discussed below, both motions are denied.

## BACKGROUND

The Federal Deposit Insurance Company (FDIC or plaintiff) filed this action as receiver for Cooperative Bank in Wilmington, North Carolina, against officers and directors of the bank for negligence, gross negligence, and breach of fiduciary duties. FDIC points specifically to several steps taken by the bank beginning in 2005 as part of an aggressive growth strategy, evidenced by rapid growth in Cooperative Bank's acquisition, development, and construction loan concentration as a percentage of total bank capital. Defendants, consisting of six outside directors and three officers of Cooperative Bank, moved to dismiss this action in its entirety pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Following a hearing on the matter, the Court on April 13, 2012,

denied defendants' motion to dismiss [DE 38].

## DISCUSSION

### Motion to Reconsider or in the Alternative to Certify Interlocutory Appeal

Motions to reconsider are allowed in "certain, limited circumstances," and it is within the discretion of the trial court to determine whether reconsideration of an interlocutory order is appropriate. *Wiseman v. First Citizens Bank & Trust Co.,* 215 F.R.D. 507 (W.D.N.C.2003); *Webster Motor Car Co. v. Zell Motor Car Co.,* 234 F.2d 616 (4th Cir.1956). Their purpose is to allow the Court "correct manifest errors of law or fact or to [consider] newly discovered evidence," *Harsco Corp. v. Zlotnicki,* 779 F.2d 906, 909 (3rd Cir.1985), and are improper if they serve merely to ask the Court "to rethink what the Court had already thought through rightly or wrongly." *Above the Belt, Inc. v. Mel Bohannan Roofing, Inc.,* 99 F.R.D. 99, 101 (E.D.Va.1983).

Defendants ask the Court to reconsider its order denying their motion to dismiss. In the alternative, defendants request that the Court certify its order for interlocutory appeal pursuant to 28 U.S.C. § 1292(b). Defendants contend that the Court erred in its determination of fundamental legal questions involving corporate governance. Specifically, defendants argue that the Court committed clear error when it recognized a difference in the governing standards of liability as between suits brought by third parties and suits brought on behalf of the corporation as well as in its holding that the conduct of officers and directors falling outside the business judgment rule is subject to an ordinary negligence standard.

### I. Ordinary negligence standard against directors or officers in suits by the corporation

First, the Court considers its holding that an ordinary negligence standard may apply to officers and directors. The North Carolina General Statutes provide that officers and directors of corporations must discharge their duties (1) in good faith; (2) with the care an ordinary prudent person in a like position would exercise under similar circumstances; and (3) in a manner he reasonably believes to be in the best interests of the corporation. N.C. Gen.Stat. §§ 55–8–42; 55–8–30. "It is a long-standing rule of construction that 'when a statute makes use of a word, the meaning of which was well ascertained at common law, the word will be understood in the sense it was at common law.'" *Stark ex rel. Jacobsen v. Ford Motor Co.,* 723 S.E.2d 753, 764 (N.C.2012) (quoting *Smithdeal v. Wilkerson,* 100 N.C. 52, 53, 6 S.E. 71, 71 (1888)); *see also Standard Oil Co. of N.J. v. United States,* 221 U.S. 1, 59, 31 S.Ct. 502, 55 L.Ed. 619 (1911) (stating that "where words are employed in a statute which had at the time a well-known meaning at common law or in the law of this country, they are presumed to have been used in that sense").

Ordinary negligence under North Carolina law has long been defined as "the failure to exercise the degree of care that an ordinarily prudent person would exercise under the same or similar circumstances when charged with like duty." *Williamson v. Clay,* 243 N.C. 337, 345, 90 S.E.2d 727 (1956). The Court can find basis upon which to presume that the North Carolina legislature, when enacting sections 55–8–42 and 55–8–30, mirrored the language of the law's ordinary negligence standard so closely when instead it meant to impose only a gross negligence standard on officers and directors of cor-

porations. *See e.g.* N.C. Gen.Stat. § 58–24–35(d)(4) (no personal liability for an officer or member of a supreme governing body of a fraternal benefit society *except* where the person has committed *gross* negligence or willful or wanton misconduct that resulted in damage or injury); N.C. Gen.Stat. § 55A–8–60(a)(4) (imposing *gross* negligence standard for personal liability on directors and officers of non-profit organizations, except to the extent covered by insurance). Further, the Court is informed by a preeminent treatise of North Carolina corporation law, which concludes in discussing the duty of care of directors that, based on the language and background of North Carolina cases, a standard of reasonable care under the circumstances, not a lower gross negligence standard, would apply. Russell M, Robinson II, *Robinson on North Carolina Corporation Law* § 14.03 (7th ed. 2009).

■ Second, while the North Carolina Supreme Court has held that a directors may not be liable to *third parties* for simple or ordinary negligence, *Myers & Chapman, Inc. v. Thomas G. Evans, Inc.*, 323 N.C. 559, 572, 374 S.E.2d 385 (1998), the Court again notes that North Carolina cases and lawmakers have recognized that the fiduciary duty owed to corporations by their officers and directors is different from that which exists as between the officers and directors and third parties. *See generally Robinson on North Carolina Corporation Law* § 14.08 (discussing the differences between duties owed to the corporation and duties owed to third parties, as well as those instances in which a director might be held liable to third parties); *see also North Carolina Commentary* to § 55–8–30 ("although the word "fiduciary" is no longer used in describing the duty owed by a director to a corporation, there is no intent to change North Carolina Law in this area."); *compare Wilson v. McClenny*, 262 N.C. 121, 133, 136 S.E.2d 569 (1964) (directors owe the corporation fidelity and the duty to use due care); *Governors Club, Inc. v. Governors Club Ltd. P'ship*, 152 N.C.App. 240, 247–48, 567 S.E.2d 781 (2002) (directors owe corporation a fiduciary duty and alleged breached of this duty is properly maintained in an action by the corporation) *with Oberlin Capital, L.P. v. Slavin*, 147 N.C.App. 52, 57, 554 S.E.2d 840 (2001) (general rule is that directors do not owe a fiduciary duty to creditors). In cases brought against officers and directors by the corporation itself, "if there is a loss of the corporation's assets, caused and brought about by the negligent failure of its officers to perform their duties, the corporation, or its receiver ... can maintain an action therefor." *North Carolina Corp. Comm. v. Harnett Cnty. Trust Co.*, 192 N.C. 246, 134 S.E. 656 (1926). In light of the above, the Court finds that its holding that the corporation may bring suit against its directors and officers for ordinary negligence is not clearly erroneous.

II. *Ordinary negligence to the extent that negligence falls outside the business judgment rule*

■ North Carolina's Business Corporation Act did not abrogate the common law business judgment rule, and a "proper analysis requires examinations of defendant[s'] actions in light of the statutory protections of N.C. Gen.Stat. § 55–8–30(d) ... *and* the business judgment rule, either or both of which could potentially insulate [them] from liability." *State ex rel. Long v. ILA Corp.*, 132 N.C.App. 587, 601–02, 513 S.E.2d 812 (1999) (emphasis added). Additionally, at least one court upon which defendants rely stated that "a director who is not entitled to the protection of the business judgment rule can be liable for negligent conduct which harms the corporation." *State v. Custard*, No. 06 CVS 4622, 2010 NCBC 6, 85, 2010 WL 1035809 (N.C.Super. March 19, 2010) (declining to

extend *ILA's* holding to establish a cause of action for negligent mismanagement of an insurance company). Therefore, the Court presumed just that—that the officers and directors in the instant matter will have their actions judged in light of *both* the statutory protections and the business judgment rule. In other words, should defendants' actions be determined to fall beyond the scope of the business judgment rule, they will be judged against an ordinary prudent person standard.

■ Defendants further contend that the Court erred in not applying the business judgment rule at this stage of the proceedings, stating that the timing of the application of the business judgment rule is a matter of federal procedure rather than state substantive law. The Court first notes that it relied on a decision from the Middle District of North Carolina when determining when to apply the business judgment rule. *Resolution Trust Corp. v. Bernard*, No. 94–CV–475, 1995 WL 17164886 *12 (M.D.N.C.1995). Second, the cases cited by defendants are inapposite. The first relates to dismissal under 12(b)(6) because plaintiff was without the factual grounds to assert a claim of breach of fiduciary duty in light of court's holding on the validity of stock that had been issued, in addition to the fact that the court found that plaintiff's "conspiracy theories [ ] failed to rebut the presumption that [d]efendants acted in good faith." *Anderson v. Dobson*, 627 F.Supp.2d 619, 631 (2007). The next case cited was a shareholder derivative action in which the court had before it when considering whether the defendants acted in good faith an "extensive Report that documents the Special Committee's investigation as well as its findings," in addition to the sworn affidavits of the directors on the Special Committee. *Madvig v. Gaither*, 461 F.Supp.2d 398, 409 (W.D.N.C.2006). The Court has no such record before it here, and accordingly reaffirms its holding that without further evidence the Court cannot determine at this stage whether the business judgment rule will foreclose liability.

After reviewing the submissions of the parties and its order denying the motion to dismiss, the Court does not find that it has committed a clear error of law. Accordingly, the Court, finding no other basis upon which to disturb its earlier ruling, in its discretion denies the motion to reconsider. Further, the Court declines to certify an interlocutory appeal. A district court may certify an interlocutory appeal if the order involves a controlling question of law, there is substantial ground for difference of opinion, and an immediate appeal may materially advance the ultimate termination of the litigation. 28 U.S.C. § 1292(b). As its order is consistent with other opinions of the federal district courts in North Carolina[1] that have considered the issue, *see Bernard*, No. 94–CV–475, 1995 WL 17164886 *12 (M.D.N.C.1995); *see also FDIC as receiver for Bank of Asheville v. Greenwood*, No. 1:11–CV–337–HMH (May 10, 2012) (text order following hearing), the Court does not conclude that there is a significant difference of opinion as to the issues presented here. Accordingly, the request to certify an interlocutory appeal is denied.

### Motion to Strike

■ The Court next considers plaintiff's motion strike defendants' fifth

1. Defendants place a great deal of reliance on the orders of the court in the Northern District of Georgia in *FDIC v. Skow*, No. 1:11–cv–00111–SCJ (N.D.Ga.). While there are certainly similarities between these two cases, this Court is bound to apply North Carolina, not Georgia, law. Furthermore, the Northern District of Georgia's order, while well-reasoned, is not binding this Court and does not persuade the Court to change its prior holding.

affirmative defense, avoidable consequences/failure to mitigate damages. A court may "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed.R.Civ.P. 12(f). Plaintiff contends that defendants' fifth affirmative defense is an insufficient defense and must stricken as it is barred as a matter of law. Motions under this rule are generally disfavored as a drastic remedy, *Waste Mgmt. Holdings, Inc. v. Gilmore*, 252 F.3d 316, 347 (4th Cir.2001), and a district court has broad discretion in deciding whether to strike matters from pleadings. *Renaissance Greeting Cards, Inc. v. Dollar Tree Stores, Inc.*, 227 Fed.Appx. 239, 246 (4th Cir.2007) (rulings on motion to strike reviewed for abuse of discretion).

Defendants' fifth affirmative defense asserts that an injured plaintiff must exercise reasonable care and diligence to avoid or lessen the consequences of a defendant's wrong. As applied here, defendants contend that the terms of the loss-share agreement entered into by FDIC and Cooperative's acquiring bank "did not provide the acquiring bank with the incentive to take reasonable steps to lessen any alleged losses and/or maximize the value of collateral by, for example agreeing to loan modifications or workouts, or by making reasonable collection efforts." [DE 43]. Plaintiff contends that the majority federal rule precludes the assertion of defendants' fifth affirmative defense, arguing that the FDIC owes its duties *solely* to depositors, creditors, and the public at large, not to defendants who are alleged to have contributed to the failure of a financial institution.

Before the Supreme Court's decision in *O'Melveny & Myers v. FDIC*, 512 U.S. 79, 114 S.Ct. 2048, 129 L.Ed.2d 67 (1994), a number of federal courts had adopted a "no duty rule," which held that federal receivers, like the FDIC, "were not subject to affirmative defenses based on the receiver's discretionary conduct—including post-receivership conduct." *Resolution Trust Corp. v. Massachusetts Mut. Life Ins. Co.*, 93 F.Supp.2d 300, 304 (W.D.N.Y. 2000). After *O'Melveny*, which held that where the FDIC brings an action as receiver, it "steps into the shoes" of the failed institution and the state common law governs tort liability, 512 U.S. at 86, 114 S.Ct. 2048, courts are split as to whether the "no duty rule" still applies. *Massachusetts Mut. Life Ins. Co.*, 93 F.Supp.2d at 304–305 (listing cases).

The Fourth Circuit has held, in an unpublished opinion, that after *O'Melveny*, "state law controls what defenses are available against the FDIC when the agency is acting as the receiver of a failed financial institution." *Grant Thornton, LLP v. Fed. Deposit Ins. Corp.*, 435 Fed. Appx. 188, 199 (4th Cir.2011). Noting that the "FDIC simply " 'steps into the shoes' of the failed" financial institution and is then subject to whatever defenses state law provides," the court of appeals held that the applicable state law governed the affirmative defenses at issue. *Id.* (citation omitted).

Here, the parties agree that North Carolina applies in this instance, and North Carolina law provides that a plaintiff must take reasonable steps to mitigate its damages. *First Nat. Pictures Distributing Corp. v. Sewell*, 205 N.C. 359, 171 S.E. 354 (1933); *see also Bombardier Capital Inc. v. Lake Hickory Watercraft, Inc.*, 178 N.C.App. 535, 538–39, 632 S.E.2d 192 (2006). Accordingly, in the absence of controlling precedent from this circuit and in light of the unwillingness of courts "to determine disputed and substantial questions of law or the legal consequences of pleadings on a motion to strike," the Court denies plaintiff's motion. *Tivoli Realty v.*

*Paramount Pictures,* 80 F.Supp. 800, 803 (D.Del.1948).

### CONCLUSION

For the foregoing reasons, defendants' motion to reconsider or in the alternative to certify interlocutory appeal is DE-NIED. Plaintiff's motion to strike is also DENIED.